| | |
|---|---|
| Unitil Corporation and Northern Utilities, Inc. d/b/a Unitil, <br><br> *Plaintiffs – Counter-Defendants*, <br><br> v. <br><br> Utility Workers Union of America, Local 341, <br><br> *Defendant – Counter-Claimant* | Civil Action No. 2:16-cv-00443-JAW |

## MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT UTILITY WORKERS UNION OF AMERICA, LOCAL 341

### I.      Introduction

Defendant and Counter-Claimant Utility Workers Union of America, Local 341 ("Local 341" or the "Union"), hereby moves this Honorable Court for an order granting judgment on the pleadings against Plaintiffs and Counter-Defendants Unitil Corporation and Northern Utilities, Inc. (collectively "Unitil" or the "Company"), and in favor of the Union, pursuant to Fed. R. Civ. P. 12(c). In so doing, the Union asks this Court to confirm an arbitration award pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

The Union is entitled to judgment on the pleadings to confirm the arbitration award because the Company's Application to Vacate the Arbitration Award does not plead facts supporting a right to relief. "Judicial review of an arbitration award is among the narrowest known in the law" and, to the extent the decision is reviewable, the Award in dispute here not only drew its essence from the parties' collective bargaining agreement, but is quite clearly

correct. <u>See</u> <u>Maine Cent. R. Co. v. Bhd. of Maint. of Way Employees</u>, 873 F.2d 425, 428 (1st Cir. 1989).

The crux of the Company's case is its claim that the Arbitrator decided an issue that was not before her. The Company is mistaken. In fact, the Arbitrator reviewed evidence submitted to her concerning an issue argued by both parties. The Company's alternative argument – that the Arbitrator made a manifest error of law – is wholly without merit, and contradicts decades-old legal precedent. The Award should therefore be confirmed.

The Company is simply dissatisfied with the outcome. Given the enormous weight of legal precedent favoring confirmation of the Award, the Application should not have been brought. The Union is entitled to an award of attorney's fees for having to defend against this Application.

## II.      Factual Background

The following facts are not disputed in the Company's Application to Vacate the Arbitration Award, the Union's Answer and Counterclaim for Enforcement of the Award, the Joint Stipulation of Identification of Exhibits, and the Arbitration Award (the "Award. The Arbitrator's factual findings are conclusive in any proceeding to enforce the Award. <u>Mercy Hospital, Inc. v. Mass. Nurses Assn.</u>, 429 F.3d 338, 344 (1st Cir. 2005).

Unitil Corporation and Northern Utilities, Inc. (collectively "Unitil" or the "Company") and Utility Workers Union of America, Local 341 (the "Union") are parties to a collective bargaining agreement (the "Agreement"). The parties agreed to submit disputes about the interpretation of the Agreement to arbitration. Collective Bargaining Agreement ("CBA"), Doc. 1-1, pg. 38. The parties further agreed that the "decision of the arbitrator shall be final and binding on both parties and shall have the same force and effect as a judgment of law." <u>Id.</u>

In 2015, a dispute arose about the interpretation of the Agreement.[1] The Company was utilizing non-Union workers to perform Construction Inspection work that belonged to unionized members of the bargaining unit. The Company contended that the bargaining unit workers did not have the necessary training certification to perform the work, but, "[r]ather than provide the training, from at least 2013 to the present, the Employer [used] two to three temporary, non-bargaining unit employees hired through a temp agency, to do this work." Award, Doc. 1-5, pg. 22.

The Union invoked the grievance procedure, and the Union and the Company ultimately proceeded to arbitration. The parties jointly agreed that the Union's grievance was based in five pertinent contract provisions, two separate memoranda of understanding, and one letter of agreement.[2] Award, pgs. 2-5. The Arbitrator cited to these provisions throughout the "Decision" section of her award, while analyzing the CBA in context with the facts presented at arbitration. Award, Doc. 1-5, pgs. 19-23.

The Arbitrator, quoting the Agreement, noted that the Agreement defines "temporary employees" as employees "hired to fill temporary jobs such as seasonal construction, temporary maintenance work, or other unusual situations." Award, Doc. 1-5, pg. 22. The Arbitrator found

---

[1] Of the two grieved issues the Union pursued through to a final decision, the Arbitrator only found that the Company violated the Agreement with its assignment of Construction Inspector work. Arbitration Award, Doc 1-5, pg. 19. The Company is only seeking to vacate the portion of the Arbitrator's award that is unfavorable to the Company. In appropriate and required deference to the Arbitrator's Award, the Union does not seek the vacate the portion of the decision unfavorable to it, notwithstanding the force of the Union's feeling that the Arbitrator was incorrect.

[2] According to the Award, the parties jointly submitted the following as relevant to the resolution of the grievances: contract provisions titled Union Recognition and Bargaining Unit, Responsibility of Management, Responsibility of Union, Temporary Employees, and Overtime Distribution, a letter of agreement titled connections and tie-ins, and memoranda of understanding titled Performance Improvement Committee and Locates.

that the "record evidence does not support a finding that any of these situations exist." Id. The Arbitrator then explained all the reasons why the facts do not demonstrate that the Construction Inspector work was done by temporary employees. In accordance with that interpretation, the Arbitrator ordered the Company to cease and desist from violating the Agreement.

The Company contends that the Arbitrator's "Award is irrational and fails to draw its essence from the terms of the Agreement." Application to Vacate Arbitration Award, ¶ 28. The Company supports its contention with two arguments: first, the Company claims the Arbitrator decided an issue different from the one submitted to arbitration by the parties; and, second, the Company claims that the Arbitrator misinterpreted a provision of the collective bargaining agreement (alleged to be "a manifest error of law," Application, ¶ 3.).

## III. Legal Arguments

### A. Standard of Review

A motion for judgment on the pleadings is treated similarly to a Rule 12(b)(6) motion to dismiss. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 28 (1st Cir. 2008). "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). To survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Perez-Acevedo 520 F.3d at 29 (quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965 (2007)).

Congress has "declared [labor arbitration] to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-

bargaining agreement." 29 U.S.C. § 173(d); see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37 (1987) (noting that federal labor "statutes reflect a decided preference for private settlement of labor disputes without the intervention of government"). Accordingly, federal courts afford great deference to the labor arbitration process. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) ("Judicial review of a labor-arbitration decision pursuant to [a collective bargaining agreement] is very limited."); Poland Spring Corp. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445, 314 F.3d 29, 33 (1st Cir. 2002) ("Judicial review of an arbitrator's decision is extremely narrow and deferential."). The First Circuit has described the standard for review of labor arbitration awards as "one of the narrowest standards of judicial review in all of American jurisprudence." UMass Mem'l Med. Ctr., Inc. v. United Food & Commercial Workers Union, 527 F.3d 1, 4 (1st Cir. 2008) (citations omitted) (internal quotation marks omitted) (emphasis added).

The court is not tasked with reviewing the merits of the arbitrator's award. United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 568 (1960) ("The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.") (footnote omitted); United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960) ("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."). In fact, even if the court is convinced the arbitrator committed "a serious error," the court still may not overturn the award. E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) (quoting Misco 484 at 38); see also

Poland Spring Corp., 314 F.3d at 33 (noting that the court "cannot vacate the award because the arbitrator misreads the contract"). As such, labor arbitration awards are "nearly impervious to judicial oversight." Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000) (emphasis added).

In the First Circuit "a court may review and set aside an arbitrator's decision only if the decision was: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Local 1445, United Food & Commercial Workers Int'l Union, AFL-CIO v. Stop & Shop Companies, Inc., 776 F.2d 19, 21 (1st Cir. 1985) (citing Bettencourt v. Boston Edison Co., 560 F.2d 1045, 1050 (1st Cir. 1977)).

**B. The Court Should Grant The Union's Motion For Judgment On The Pleadings Because The Arbitrator's Award Is Presumptively Unreviewable And Draws Its Essence From The Collective Bargaining Agreement.**

In order for the Court to have grounds to vacate the Award, "at a minimum, [the Company] must establish that the award is unfounded in reason and fact, is based on reasoning so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling or is mistakenly based on a crucial assumption which is concededly a non-fact." Bettencourt v. Boston Edison Co., 560 F.2d 1045, 1050 (1st Cir. 1977) (citations omitted) (internal quotation marks omitted). An arbitration award may not be reviewed for being "unfounded in reason and fact" if the award is "factually grounded." Local 1445, United Food & Commercial Workers Int'l Union, AFL-CIO, 776 F.2d at 22 (noting that "[e]ven if we were to disagree with the arbitrator's construction of the provision, however, that would not be sufficient to overcome the presumption of unreviewability"). An award also may not be reviewed for "palpably faulty" reasoning if the decision is "simply in the realm of what a judge might decide."

6

Id. ("It is beside the point that there may be other, possibly even better, interpretations of the provision. That is not the standard."); see also Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de Puerto Rico, 583 F.2d 1184, 1187 (1st Cir. 1978) ("[A]rbitrators are not bound to follow judicial rules of construction and interpretation."). If none of these narrow exceptions are present, the Court must enforce an arbitrator's award, if it "draws its essence from the collective bargaining agreement." Enterprise Wheel & Car Corp., 363 U.S. at 596; accord Misco, 484 U.S. at 36.

This minimal standard for enforcement is easily met: "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Enterprise Wheel & Car Corp., 363 U.S. at 596; see also E. Maine Med. Ctr., Inc. v. Maine State Nurses Ass'n, 866 F. Supp. 607, 609 (D. Me. 1994) ("[W]here the arbitrator's award depends on an interpretation of a collective bargaining agreement, a court should uphold that award if it can find, within the four corners of the agreement, *any plausible basis for that interpretation*") (emphasis in original) (internal quotation marks omitted) (quoting Larocque v. R.W.F., Inc., 8 F.3d 95, 96 (1st Cir.1993)).

### 1. The Company's Claim Fails to Meet Any of the <u>Bettencourt</u> Exceptions to Confirming an Arbitration Award.

Against this highly deferential standard, the Company's arguments that the Award should be vacated lack all merit. First and foremost, in this case, the Arbitrator's decision does not meet any of the Bettencourt exceptions and as such ought not to be reviewed. See Local 1445, United Food & Commercial Workers Int'l Union, AFL-CIO,776 F.2d at 22 (affirming the District Court's decision to not review an arbitration award because the alleged problems with the award

did not fit "within any of the narrow <u>Bettencourt</u> exceptions to the unreviewability of such decisions" and therefore should not be reviewed by a court).

The Award is grounded in reasoning and fact, and accordingly, should be enforced. The Arbitrator carefully explained her interpretation of the Agreement to prohibit the Company's use of non-unit contract workers to do construction inspection work. Award, Doc. 1-5, pgs. 19-22. She cited to the applicable provisions of the Agreement and analyzed those provisions in light of the evidence produced by the Company and the Union. <u>Id.</u> Such consideration well exceeds the minimum requirements for enforcement of an award. <u>See</u> <u>E. Associated Coal Corp.</u>, 531 U.S. at 62 (citations omitted) (internal quotation marks omitted) ("[A]s long as an honest arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision.").

**2. The Question Decided Was Squarely Before the Arbitrator**

The question of whether the Company had contracted out CI work to temporary employees was squarely before the Arbitrator. The Company is wrong to claim otherwise. The Union offered evidence on this point, and the Union's post-hearing arbitration brief, filed on June 23, 2016, discusses at some length the hiring of temporary employees to perform Construction Inspection. Doc. 1-7, pgs. 14-17. More importantly, in its own post-hearing arbitration brief, the Company specifically addressed the evidence of temporary employees, and addressed the Union's claim on the merits. In its brief, the Company wrote:

> The Company has the express contractual right to use either outside contractors, <u>temporary</u>, non-bargaining unit employees or, if available, bargaining unit employees to perform this work." … "Moreover, because bargaining unit employees were and have remained fully occupied, they <u>could not have been damaged by the assignment of such work to temporary employees</u> and/or outside contractors.

Doc. 1-6, pg. 34 (emphasis added). The evidence about temporary employees was before the

Arbitrator as Union Exhibit 4. That information was provided by the Company itself. Award, pg.

22. Given that the Company produced these records in conjunction with the hearing, that the

records were introduced as evidence (giving the Company an opportunity to respond with other

evidence if it so desired), and given the Company's argument about this evidence, the question

was clearly before the Arbitrator, and it was properly decided.

It is the case that in a footnote in its brief the Company states, "Putting aside that this

grievance is not about whether construction inspection work may be assigned to temporary

employees ("yes")…." Doc. 1-6, pg. 34, n. 21. That is the closest the Company comes, making

simply an allusion to argument, but the Company does not explicitly make that argument, though

it surely had the opportunity to do so. Indeed, one would read the footnote as making nothing

other than a throwaway rhetorical statement. Critically, the Employer's argument that the

question of temporary employees was not before the Arbitrator was made to the Arbitrator. Her

Award indicates that the Arbitrator saw the issue of temporary employees well within the issue

she had been asked to decide. Furthermore, once it saw the Union's argument in its post-hearing

brief on June 23, 2016, the Company made no objection prior to the Award issuing on July 25,

2016, indicating that the Company understood that the Union's argument fit well within the

boundaries of the issue presented. Put differently, the Arbitrator necessarily concluded that as a

matter of fact and contract interpretation that the Union's grievance about "contractors" was

about "temporary employees."

The Company apparently asks this Court to jump to the unreasonable conclusion that the

Union's grievance over the Company's use of "contractors" was solely about the Company's

hiring of subcontracting companies. But the grievance (Doc. 1-2) does not refer to

"subcontracting companies," and neither does the demand for arbitration (Doc. 1-4). The issue before the Arbitrator was "Did the Employer violate the collective bargaining agreement by using <u>contractors</u> to perform the work set out in the April 24, 2015 grievance?" Doc. 1-5, pg. 2.

To that end, the evidence at hearing concerning Construction Inspectors concerned the hiring of temporary employees. To describe a temporary employee as a "contractor," as the Union did in its grievance, is a reasonable and not uncommon use of the word contractor. Moreover, as the Arbitrator found, these "temporary employees" were paid at "hourly rates far in excess of bargaining unit employees, to perform bargaining unit work." Doc. 1-5, pg. 22. The Arbitrator did not make specific findings on the exact hourly rates the Company paid to these temporary contract employees, but the undisputed evidence at hearing was that they were paid between $52/hour for straight pay and up to $81/hour in overtime. Doc. 1-7, pg. 15 (Union brief, reciting data provided by the Company). By contrast, the hourly rates paid to bargaining unit members in 2014 ranged from $21.28 to $34.21 (with overtime rates ranging from $31.92 and $51.32). Doc. 1-1, pg. 41. This means that a contract temporary employee earned more per hour for straight pay than the highest paid bargaining unit member earned for an overtime rate. This substantial differential in hourly rates – contractors earned over 50% more than members of the bargaining unit – is indicative of a contractor status.

Moreover, the Company apparently seeks to retroactively criticize the non-attorney union representatives who wrote the grievance for word choice, using "contractor" rather than "temporary employee" regarding Construction Inspection. But based on what occurred at the hearing, the Company absolutely understood what the issue was. Indeed, why would the Union have offered evidence about the temporary employees except to prove its grievance about contracting out construction inspection work? The Company knew perfectly well what the issue

was at hearing, just as did the Arbitrator and Union. Now disappointed at the outcome, the

Employer attempts to retroactively create a controversy over the issue in dispute at the hearing,

when in fact no such controversy was present at the hearing. This cannot be a basis to vacate an

Arbitration Award.

The cases cited by the Company in its Complaint do not support its claim. The First

Circuit wrote that an arbitrator "lacks authority to decide questions the parties have not agreed to

submit to him." Courier-Citizen Co. v. Boston Electrotypers Union No. 11, Int'l Printing &

Graphic Commc'ns Union of N. Am., 702 F.2d 273, 281 (1st Cir. 1983). But the dispute there

concerned back pay owed to an employee in a collateral arbitration proceeding that followed a

hearing about a different employee. The connection was overly attenuated to be deemed within

the original issue. "The Union first presented the Sparks claim to Hogan at the ex parte hearing

that took place well after the issues framed in Hogan I had been explored and largely resolved by

the arbitrator." Id. In this case, however, the very evidence and claim was put before the

Arbitrator at hearing, argued in briefs by both sides and then decided.

In Int'l Union of Elec., Radio, Mach. Workers, AFL-CIO v. Gen. Elec. Co., 429 F.2d

412, 414 (1st Cir. 1970), the First Circuit found a grievance not arbitrable because the union had

failed to present a "fully processed grievance" to arbitration, as required by the CBA. That case

rested on specific language in the CBA, which is critically missing from the Company's

argument here.

The Company's argument should be rejected because the Arbitrator heard evidence and

arguments from both parties on the question of temporary employees doing construction

inspection. The issue was well within the scope of the issue presented.

### 3.   There Was No Manifest Error of Law

Second, the Company weakly argues that the Arbitrator made a manifest error of law. She did not. The First Circuit holds that a "manifest disregard of the law" will be found "where the record shows that the arbitrator recognized applicable law, but willfully ignored it." Asociacion de Empleados del Estado Libre Asociado de Puerto Rico v. Union Internacional de Trabajadores de la Industria de Automoviles, Aeroespacio e Implementos Agricolas, U.A.W. Local 1850, 559 F.3d 44, 47 (1st Cir. 2009); Wonderland Greyhound Park, Inc. v. Autotote Sys. Inc., 274 F.3d 34, 35 (1st Cir.2001).

However, it is quite clear that the Award's reasoning is not "so palpably faulty that no judge could ever make such a ruling." See Local 1445, United Food & Commercial Workers Int'l Union, AFL-CIO, 776 F.2d at 22 (affirming the award when the arbitrator's interpretation is merely "conceivable"). Contrary to the Company's contentions, the Arbitrator did not decide that the Company could not utilize "temporary employees"; rather, the Arbitrator found that the employees the Company was utilizing for the disputed Construction Inspector work did not meet the definition of "temporary employees" from the Agreement. Application to Vacate Arbitration Award, ¶ 25.; Arbitration Award, Doc. 1-5, pg. 22. The provision in question permits temporary workers in certain circumstances, "to fill temporary jobs such as seasonal construction, temporary maintenance work, or other unusual situations". CBA, Doc. 1-1, pg. 4. The Arbitrator interpreted the CBA to find that these circumstances were not present with regard to the temporary employees doing the contracted work. Award, Doc. 1-5, pg. 22. The Arbitrator's reading of the Agreement is sufficiently "conceivable" to resist judicial review and must be enforced. See Local 1445, United Food & Commercial Workers Int'l Union, AFL-CIO, 776 F.2d at 22; Enterprise Wheel & Car Corp., 363 U.S. at 599 ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the

contract, the courts have no business overruling him because their interpretation of the contract is different from his."); Wheelabrator Envirotech Operating Servs. Inc. v. Massachusetts Laborers Dist. Council Local 1144, 88 F.3d 40, 44 (1st Cir. 1996) (citations omitted) (internal quotation marks omitted) ("[W]e should refuse to set aside an arbitrator's decision unless it can be shown that the arbitrator acted in a way for which neither party could possibly have bargained.").

No plausible reading of the Company's allegations rise to the level of claiming the Award is based in a "non-fact." As the Company stated in its Application, the parties jointly stipulated to the issue of whether the Company "violate[d] the collective bargaining agreement by using contractors to perform the work set out." The Award, in turn, relies upon an interpretation of the CBA, not of contested facts. See Int'l Bhd. of Firemen & Oilers, Local 261 v. Great N. Paper Co., 765 F.2d 295, 296 (1st Cir. 1985) (affirming the District Court's decision to uphold an arbitration award where the arbitrator relied on an "allegedly erroneous conclusion" based in a misunderstanding of the underlying facts because "[i]t is well settled that courts have a very limited scope of review when passing on the validity of labor arbitration awards"); Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (quoting Misco 484 U.S. at 39) ("When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award.").

The Award does more than merely draw its "essence" from the agreement. See Enterprise Wheel & Car Corp., 363 U.S. at 596; accord Misco, 484 U.S. at 36. The Award cites to the provisions of the CBA it interprets and analyzes the facts in accordance with those provisions. In doing so, the Arbitrator is doing more than the minimum of "even arguably construing or applying the contract." See Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 10 (1st Cir.

13

2001) (internal quotation marks omitted) (citations omitted) ("Even if a court strongly disagrees with the arbitrator's decision, that is not enough to vacate the arbitral award as long as the arbitrator is even arguably construing or applying the contract").

Adherence to the Award is also mandated by the CBA. The parties agreed that the "decision of the arbitrator shall be final and binding on both parties and shall have the same force and effect as a judgment of law." CBA, Doc. 1-1, pg. 38; Enterprise Wheel & Car Corp., 363 U.S. at 599 ("Where parties to a collective bargaining agreement have provided for arbitration as the final and binding method for settling grievances the arbitration award is normally non-reviewable by a court"). Even were the Court to "strongly disagree" with the Arbitrator's interpretation, it cannot be said that there is no "plausible argument that favors [the Arbitrator's] interpretation." See Keebler Co., 247 F.3d at 10; Crafts Precision Indus., Inc. v. Lodge No. 1836 of Dist. 38, Int'l Ass'n of Machinists & Aerospace Workers, 889 F.2d 1184, 1185 (1st Cir. 1989) (internal quotation marks omitted) (citations omitted) ("[W]e shall uphold an arbitrator's interpretation of a contract as long as we can find some plausible argument that favors his interpretation."). Therefore, the Award must be confirmed.

C. **The Union Is Entitled To Attorney's Fees And Costs Because The Company Has Advanced Claims That Amount To Nothing More Than A Disagreement With The Arbitrator's Findings.**

The Court has significant discretion in awarding attorney's fees to a labor union defending against an application to vacate an arbitration award. Upon review, a District Court's decision will be upheld absent a "manifest abuse of discretion." Local 2322, Intern. Broth. of Elec. Workers v. Verizon New England, Inc., 464 F.3d 93, 100 (1st Cir.2006) (citing Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 292 (1st Cir.2001)). Unless "the trial court ignored a factor deserving significant weight, relied upon an improper factor, or evaluated all the

14

proper factors (and no improper ones), but made a serious mistake in weighing them," the decision will stand. Gay Officers Action League, 247 F.3d at 292-93.

When utilizing that discretion, a court need not find "subjective bad faith" as grounds to award attorneys' fees; rather, a court may award fees and costs to the winning party in a Section 301 action if the losing party's position was "frivolous, unreasonable, or without foundation." Local 285, Serv. Employees Int'l Union AFL-CIO v. Nonotuck Resource Assoc., Inc., 64 F.3d 735, 737 (1st Cir.1995); Local 2322, Intern. Broth. of Elec. Workers v. Verizon New England, Inc., 464 F.3d 93 (2006) (quoting Local 285, Serv. Employees Int'l Union AFL-CIO, 64 F.3d at 737 and Washington Hosp. Ctr. v. Serv. Employees Int'l Union, 746 F.2d 1503, 1510 (D.C.Cir.1984)).

This arbitration case presented no complex or novel legal questions that necessitated federal court intervention. Further, as examined extensively above, "[j]udicial review of an arbitration award is among the narrowest known in the law." Maine Cent. R. Co. v. Bhd. of Maint. of Way Employees, 873 F.2d 425, 428 (1st Cir. 1989). Yet, the Company chose to file a baseless lawsuit challenging an arbitrator's interpretation of a collective bargaining agreement because it was dissatisfied with the Award. The Company's action is improper. It has forced the Union to make needless expenditures of its members' dues money and has subjected members to many more months of the lost opportunity to perform and be compensated for Construction Inspection work. See Courier-Citizen Co. v. Boston Electrotypers Union No. 11, Intern. Printing & Graphic Communications Union of North America, 702 F.2d 273, 282 (citations omitted) (internal quotations omitted) (noting "remedies include an award of attorneys' fees when a party without justification contests an enforceable award."). Accordingly, the Union respectfully

requests that the Court order the Company to pay the Union's reasonable attorney's fees and costs incurred in defending an action that should never have been brought.

## IV.     Conclusion

For the foregoing reasons, Defendant and Counter-Claimant Utility Workers Union of America, Local 341 respectfully requests that this Court grant Judgment on the Pleadings in its favor confirming the Award. The Union also requests that this Court award attorney's fees and costs to the Union because Unitil has advanced claims that are frivolous, unreasonable, and without foundation.

<div style="margin-left: 50%;">

Respectfully submitted,
**UTILITY WORKERS UNION OF AMERICA, LOCAL 341**
By its Attorney,

/s/ Paul F. Kelly
Paul F. Kelly
BBO#267000
Segal Roitman, LLP
111 Devonshire Street, 5th Floor
Boston, MA 02109
617-742-0208 ext.228
pkelly@segalroitman.com

</div>

Dated: March 17, 2017

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by First Class Mail on March 17, 2017.

<div style="margin-left: 50%;">

/s/ Paul F. Kelly
Paul F. Kelly

</div>