UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| Unitil Corporation and Northern Utilities, Inc. d/b/a Unitil, <br>         *Plaintiffs*, <br>     v. <br> Utility Workers Union of America, Local 341, <br>         *Defendant*. | § § § § § § § § § § § Civil Action No. 2:16-cv-00443-JAW |

**PLAINTIFFS' MOTION FOR JUDGEMENT ON THE PLEADINGS**
**(WITH INCORPORATED MEMORANDUM OF LAW)**

The sole question before the arbitrator was whether plaintiffs Unitil Corporation and/or Northern Utilities Inc. d/b/a Unitil (collectively the "Company") could use *contractors* to perform certain work, not whether the Company could use *temporary employees* to perform such work. As such, after correctly determining by "Decision & Award" dated July 28, 2016 (the "Award") that the Company could use contractors to perform certain work (including construction inspection work), the arbitrator inexplicitly also determined that the Company could *not* use "temporary, non-bargaining unit employees" to perform construction inspection work. Contractors are not the same as a temporary employees. *See* 29 U.S.C. § 152(3) (under the National Labor Relations Act, the "term employee … shall not include … any individual having the status of an independent contractor"). Moreover, the question of whether the Company may use contractors to perform certain work is governed by different contractual provisions and legal principles than the question of whether the Company may use "temporary, non-bargaining unit employees" to perform such work. While the decisions of arbitrators are normally entitled to deference, it is well established that an arbitrator lacks authority to decide questions not

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

submitted to her and that such awards must be vacated. For this and other reasons set forth herein, the Company seeks to vacate that portion of the Award: (a) finding that the Company violated its agreement with Utility Workers Union of America, Local 341 by using temporary, non-bargaining unit employees for construction inspection work; and (b) ordering the Company to cease and desist assigning such work to temporary, non-bargaining unit employees.

## UNDISPUTED FACTS FROM THE PLEADINGS

1. The Parties

Unitil Corporation ("Unitil") is a public utility holding company organized and existing under and by virtue of the laws of the State of New Hampshire. Application to Vacate Arbitration Award, ¶ 4; Answer and Counterclaim of Defendant Utility Workers Union of America, Local 341 at Answer, ¶ 4 and Counterclaim, ¶ 3. Unitil's utility affiliates include Northern Utilities, Inc. d/b/a Unitil ("Northern"). Application, ¶ 4; Union Answer, ¶ 4; Union Counterclaim, ¶ 4. Northern is a public utility organized and existing under and by virtue of the laws of the State of New Hampshire. Application, ¶ 5; Union Answer, ¶ 5. *See* Union Counterclaim, ¶ 4. Northern is currently, and was at all times pertinent hereto, doing business within the jurisdiction of this Court and is an employer in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (hereinafter referred to as "Section 301"). Application, ¶ 5; Union Answer, ¶ 5; Union Counterclaim, ¶¶ 5-6.

Defendant Utility Workers Union of America, Local 341 (the "Union") is an unincorporated labor organization within the meaning of Section 301 and represents employees in an industry affecting commerce. Application, ¶ 6; Union Answer, ¶ 6; Union Counterclaim,

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

¶ 2. The Union is the authorized bargaining representative for certain employees at the Company's facilities in Maine. *Id.*

    2.    <u>The Collective Bargaining Agreement</u>

For a number of years, the Company and the Union (collectively the "Parties") have regularly entered into collective bargaining agreements that provide the terms and conditions of employment for certain Company employees represented by the Union. Exhibit A to the Application [Doc. 1-1] is the agreement currently in effect (the "Agreement"). Stipulation of the Parties ("Stipulation") [Doc. 13], ¶ 1.[1]

Article XIV of the Agreement sets forth a grievance procedure that the Parties must follow to resolve "difference[s] … as to the true interpretation and application of [the] Agreement." Agreement (Application Exhibit A) at 37. Article XIV also provides that if a "grievance involving the interpretation or application of this Agreement is not satisfactorily resolved in the grievance procedure the aggrieved party may request that the matter be referred to the American Arbitration Association ["AAA"] for appointment of an arbitrator under its rules to arbitrate grievances." Agreement (Application Exhibit A) at 38. However, the arbitrator "shall have no power to add to, or subtract from or otherwise modify the terms of this Agreement." *Id.* Notably, Article XIV does not provide an arbitrator with authority to decide questions not first raised at the grievance stage and/or that the Parties have not agreed to submit to her.

---

[1] In addition to stipulating as to the authenticity of the exhibits submitted with the Company's application/motion to partially vacate the Award, the Parties also stipulated that "[t]he Court may review and consider [such exhibits] in connection with any motions filed by the parties in this action, including any motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure." Stipulation, ¶ 8.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

### 3. The Grievance Regarding "Contractors"

In April 2015, the Union filed a grievance under the Agreement alleging that "*contractor[s]* [were] performing" certain "bargaining unit work" in "violation of [the] contract." Application, Exhibit B [Doc. 1-2] ("Grievance") (emphasis added); Stipulation, ¶ 2.[2] Notably, the Union's grievance did not allege that the Company was violating the Agreement by using temporary employees to perform any such work. Grievance (Application Exhibit B). The Company denied the Union's grievance because it was contractually permitted and/or not contractually precluded to assign the subject work to independent contractors. Application, Exhibit C ("Grievance Response") [Doc. 1-3]; Stipulation, ¶ 3. *See also* Agreement (Application Exhibit A).

In November 2015, the Union filed a demand for arbitration with the Company and AAA. Application, Exhibit D ("Demand for Arbitration") [Doc. 1-4]; Stipulation, ¶ 4. The Demand for Arbitration again stated the Union's grievance as being "*contractors* performing bargaining unit work in violation of [the Parties'] contract." Demand for Arbitration (Application Exhibit D) (emphasis added). Notably, like the Grievance, the Union's Demand for Arbitration did not allege that the Company was violating the Agreement by using temporary employees to perform any work. Demand for Arbitration (Application Exhibit D).

Based on the Union's Grievance and Demand for Arbitration, at the May 2016 arbitration hearing, the Parties stipulated and the arbitrator confirmed in her Award that the sole substantive

---

[2] More specifically, the Union alleged that the Company's assignment of the following mostly seasonal work to contractors violated the Agreement: (a) replacing old and/or installing new natural gas distribution lines (mains and service lines) and retiring old natural gas service lines (*i.e.*, construction work) [Grievance Parts 1, 2, 4, 5, 7]; (b) inspecting the construction work undertaken by other contractors [Grievance Part 6]; and (c) conducting outdoor "service line [gas leak] surveys" [Grievance Part 3]. The Union also alleged that the Company's use of contractors to remove snow [Grievance Part 8] and clean its facilities [Grievance Part 9] violated the Agreement. Grievance (Application Exhibit B).

"issue" to be determined by her was whether the Company "violate[d] the collective bargaining agreement by using *contractors* to perform the work set out in the April 24, 2015 grievance." Application, Exhibit E ("Award") [Doc. 1-5] at 2 (emphasis added); Stipulation, ¶ 5.

Given that the Union's Grievance and Demand for Arbitration makes reference only to "contractors," as does the Parties' stipulation and the arbitrator's agreement regarding the issue to be determined by her, the Union unsurprisingly did not reference Article IV, Section 3 ("Temporary Employees") in the "Relevant Contractual Provisions" section of its post-hearing brief. Application, Exhibit G ("Union Brief") [Doc. 1-7] at 2-4; Stipulation, ¶ 7. Instead, the Union referenced provisions in the Agreement using the words "contractors" or "outside contractors." Union Brief (Application Exhibit G) at 2-4. Notwithstanding, in its post-hearing brief, the Union for the *first time* improperly attempted to broaden and reframe the issue to be whether the Company "violated the Agreement by transferring bargaining unit work to contractoes [sic] *and employees outside of the unit*" (*e.g.*, temporary employees). *Id.* at 10 (emphasis added).

However, as noted, the issue of whether the Company "violated the Agreement by transferring bargaining unit work to … *employees* outside of the unit" was not part of the Union's April 2015 grievance, and the Company did not consent to any amendment to the grievance. Grievance (Application Exhibit B). Indeed, with respect to the construction inspection work at issue in this action, the Company expressly stated that the Union's grievance was "not about whether construction inspection work may be assigned to temporary employees" pursuant to Article IV, Section 3 of the Agreement. Application, Exhibit F ("Company Brief") [Doc. 1-6] at 34.

In her Award, the arbitrator correctly found that: (a) the Agreement does not prohibit the Company from "contracting out work;" (b) "several" provisions in the Agreement recognize the Company's "right to determine the assignment of work;" and (c) "the parties had memorialized in their [Agreement] some subcontracting work." Award (Application Exhibit E) at 19-20. As such, the arbitrator found that the use of contractors did not "subvert" the Agreement. *Id.* Accordingly, the arbitrator did not find (and could not have found) that the use of independent contractors (*e.g.*, Tri-Mont Engineering) to perform construction inspection work violated the Agreement.

Notwithstanding, the arbitrator then went beyond the plain scope of the issue submitted to her as set forth in the Union's Grievance, the Union's Demand for Arbitration, and the Parties' stipulation at the arbitration hearing (as confirmed by the arbitrator), by also determining that the Company could not use "temporary, non-bargaining unit employees" for construction inspection work because, according to the arbitrator, the assignment of such work to "temporary, non-bargaining unit employees" is not permitted by Article IV, Section 3 of the Agreement, even though that provision unambiguously provides that the Company may hire "temporary employees" to "fill temporary jobs such as seasonal construction" jobs. Agreement (Application Exhibit A) at Article IV, Section 3.

## PROCEDURAL BACKGROUND

On August 29, 2016, the Company filed an application/motion to partially vacate the Award, along with supporting documents and declaration.[3] *See* Docs. 1 and 5. Under the Federal Arbitration Act (the "FAA"), an application to a vacate an arbitration award "shall be made and heard in the manner provided by law for the making and hearing of motions." 9

---

[3] This Court has jurisdiction over this matter pursuant to Section 301, the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*), and 28 U.S.C. § 1331.

U.S.C. § 6. *See National Casualty Co. v. First State Ins. Group.*, 430 F.3d 492, 496 n.3 (1st Cir. 2005).[4] In response, the Union filed an "Answer" and "Counterclaim for Confirmation of Arbitration Award" (the "Counterclaim"), rather than an objection and application/cross-motion to confirm the Award. Doc. 8. As such, the Company submitted an "answer" rather than an "objection" to the Counterclaim. Doc. 11.

In any event, because the Court's Amended Scheduling Order calls for the filing of dispositive motions, the Company has filed its motion for judgment on the pleadings. However, regardless of nomenclature, the Company assumes that the Court will deem its application/ motion and its present motion/memorandum as adequately and sufficiently briefing the issue of whether the Award should be partially vacated. *See National Casualty Co.*, 430 F.3d at 496 n.3 (it was proper for the district court to treat a complaint brought under the FAA as a motion); *O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857 F.2d 742, 746 (11th Cir. 1988) ("The liberality of the Federal Rules is such that an erroneous nomenclature does not prevent the court from recognizing the true nature of a motion"). *See also Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 1-9 AFL-CIO, CLC v. S.D. Warren Co.*, 2004 U.S. Dist. LEXIS 22807 (D. Me. Nov. 10, 2004).

ARGUMENT

*The Arbitration Award Must Be Partially Vacated*

While courts "play only a limited role when asked to review the decision of an arbitrator," the "deference due to an arbitrator's decision does not grant carte blanche approval to any decision that the arbitrator might make." *Challenger Caribbean Corp. v. Union General De Trabajadores De Puerto Rico*, 903 F.2d 857, 860-61 (1st Cir. 1990).

---

[4] Whether this is true for actions brought to vacate an arbitration award under only the Labor Management Relations Act is less certain, as these cases seemingly are commenced by the filing of a petition or complaint.

Among other limitations on an arbitrator's authority, she "may not ignore the plain language of the contract." *Id.* at 861. As such, if the "language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement." *Id. See Poland Spring Corp. v. United Food & Commercial Workers Int'l Union*, 314 F.3d 29, 33 (1st Cir. 2002) ("If the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement"); *Eastern Maine Medical Center v. Maine State Nurses Association*, 1998 U.S. Dist. LEXIS 3279 **6-7 (D. Me. March 12, 1998) (an arbitrator may not "interpret collective bargaining agreements or impose a remedy which directly contradicts the language of the agreement").

Moreover, an "arbitrator's authority is circumscribed by the arbitration agreement, and [she] can bind the parties *only on issues that they have agreed to submit to [her]*" and "whether the arbitrator has exceeded these bounds is an issue for judicial resolution." *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580, 583 (5th Cir. 1980) (emphasis added). *See Local 1837, International Brotherhood of Electrical Workers, AFL-CIO v. Maine Public Service Co.*, 579 F. Supp. 744, 752 (D. Me. 1984) (the "Court must determine the meaning and define the scope of the [arbitration] submission in order to determine whether the [arbitrator] restricted [herself] to the issues submitted").

In this regard, the "scope of an arbitrator's authority" is not "controlled by the collective bargaining agreement alone" because that "agreement constitutes merely a promise to arbitrate." *Piggly Wiggly Operators' Warehouse, Inc.*, 611 F.2d at 583. Rather, before an "arbitration can actually proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving [her] authority to act."

*Id.* The fact that the parties *could have* submitted a particular issue to an arbitrator under a collective bargaining agreement does not mean that the arbitrator has the authority to decide it. Rather, once the parties have "actually submitted an issue" to an arbitrator, a court must look to the "submission to determine the arbitrator's authority." *Id.* at 584. In other words, the submission "joins the issue[] between the parties and empowers the arbitrator to decide it" and only it. *Id.*

As such, when an arbitrator decides "questions the parties have not agreed to submit to" her, she has exceed her authority, rendering the award unenforceable. *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 281 (1st Cir. 1983) (an arbitrator "lacks authority to decide questions the parties have not agreed to submit to [her]" and "Courts will not enforce awards exceeding the authority conferred in the submission"). *See also Frederick Meiswinkel, Inc. v. Laborer's Union Local 261*, 744 F.2d 1374, 1377 (9th Cir. 1984) ("It is of course fundamental that an arbitrator may decide only those issues submitted to arbitration, and that courts will refuse to enforce an award when the arbitrator exceeds its power"); *Maine Central Railroad Co. v. Brotherhood of Maintenance of Way Employes*, 663 F. Supp. 425, 429 (D. Me. 1987) (an arbitrator "may decide only those questions" submitted to her by the parties); *Local 1837, International Brotherhood of Electrical Workers, AFL-CIO*, 579 F. Supp. at 752 (a "labor arbitration award will be enforced … only as to *issues actually submitted*").[5]

---

[5] Because the standards of review under the FAA and the LMRA in this context are essentially interchangeable and provide similar grounds for vacating an arbitration award, the Court need not determine whether the FAA applies to this action. *See Sheet Metal & Air Conditioning Contractors Association of the Building Trades Employers Association v. Sheet Metal Workers International Association, Local Union 17*, 619 F. Supp. 1073, 1080 (D. Mass. 1985) (noting that "Section 10(d) of the Federal Arbitration Act, 9 U.S.C. § 10(d), provides for setting aside an award if the arbitrators exceeded their power by deciding an issue not submitted to them" and that, likewise, in "labor cases" brought under the LMRA, courts have held that an arbitration award that goes beyond the issues submitted by the parties is unenforceable). *See also Courier-Citizen Co.*, 702 F.2d at 281.

In *Courier-Citizen*, the parties framed the issue as follows: "Did the Company violate the contract by placing Richard Grant in a laborer's job on June 23, 1975? If so, what shall be the remedy?" The arbitrator determined the subject "job should have gone to the senior journeyman on layoff status" (*i.e.*, Gerald Kennedy), not to "the more junior [Richard] Grant." *Courier-Citizen*, 702 F.2d at 276. The arbitrator awarded Kennedy back pay based on what he would have earned between the time of Grant's improper recall and the time Kennedy obtained another position with Dennison Manufacturing Company (a company unrelated to Courier-Citizen). *Id.* The arbitrator also ordered Courier-Citizen to pay an amount to Thomas Sparks because its "failure to reinstate Kennedy promptly precluded Spark's referral to Dennison as the next most senior journeyman." *Id.*.

Courier-Citizen brought an action under section 301 of the Labor Management Relations Act to vacate the award. *Id.* at 275. The district court refused to vacate the award and entered judgment enforcing the award. *Id.* Citizen-Courier appealed the judgment. *Id.* On appeal, the First Circuit stated that while "an arbitrator has broad power to fashion remedies on issues the parties have empowered him to resolve, he lacks authority to decide questions the parties have not agreed to submit to him" and that "Courts will not enforce awards exceeding the authority conferred in the submission." *Id.* at 281 (citations omitted).

The First Circuit "vacate[d] the district court's judgment enforcing the award to Sparks" because it was "unable to locate authority for the Sparks award in the parties' submission agreement." *Id.* According to the First Circuit, the question posed by the submission agreement did not suggest that "back pay for some other employee was to be involved" and that "Spark's lost opportunity at Dennison … raises a separate issue, distinct from that in the original [arbitration] submission, which should be separately grieved." *Id.*

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

In the present case, the arbitrator exceeded her powers in a much more egregious manner than the arbitrator in *Courier-Citizen* because her determination is not simply about whether a remedy could be afforded to someone other than the employee who should have been recalled for a particular job, but rather involves the Company's current and future use of a completely different worker classification (*i.e.*, temporary employees) than the classification that was the subject of the Union's grievance (*i.e.*, contractors).

In this regard, as noted, the Union's April 2015 grievance alleged only that "*contractor[s]* [were] performing" certain "bargaining unit work" in "violation of [the] contract," not that the Company was violating the Agreement by using temporary employees to perform such work. For this reason alone, the Award should be vacated as to the Company's use of temporary employees because the Union failed to exhaust the grievance process with respect to this issue. *See International Union of Electrical, Radio, Machine Workers AFL-CIO v. General Electric Co.,* 429 F.2d 412 (1st Cir. 1970).

In *General Electric Co.*, the union filed a grievance over the "company's right to transfer certain jobs from Massachusetts and Maine." After the grievance was denied, the "union sought arbitration to contest the transfer both of jobs listed in the grievance *and of others*." *Id.* at 412 (emphasis added). The First Circuit stated that the "union's demand to arbitrate job transfers not disputed in the prior grievance was correctly rejected by the district court." *Id.* According to the First Circuit, issues not first raised at the grievance stage were not arbitrable because they were not "the subject of a 'fully processed' grievance." *Id.* Likewise, in this case, the Company's use of temporary employees was not the subject of a "fully-processed grievance."

Also, as noted, like the Union's Grievance, the Union's Demand for Arbitration states the Union's grievance as being "*contractors* performing bargaining unit work in violation of [the

Parties'] contract;" not that the Company was violating the Agreement by hiring temporary employees to perform bargaining unit work. Moreover, the Parties stipulated and the arbitrator confirmed that the sole "issue" to be determined by her was whether the Company "violate[d] the collective bargaining agreement by using *contractors* to perform the work set out in the April 24, 2015 grievance." Award [Doc. 1-5] at 2. As such, this was the only issue properly before the arbitrator.[6] There was no question/issue grieved or submitted to the arbitrator concerning the Company's use of temporary employees.[7]

Accordingly, at the arbitration hearing, the Company established, through documents and testimony, that: (a) there is no provision in the Agreement prohibiting the Company from assigning work to contractors or that in any way restricts the Company's right to do so with respect to the work at issue; (b) several provisions in the Agreement both explicitly and implicitly authorize the assignment of work to contractors (*e.g.*, Agreement [Application Exhibit A] at 2 and 46); and (c) application of the factors considered by some arbitrators where an agreement is silent or ambiguous and a "balancing test" is undertaken also supports the Company's use of contractors with respect to the subject work.

Simply stated, the question of whether the Company could use contractors to perform certain work is governed by different contractual provisions and legal principles than is the question of whether the Company could use temporary employees to perform such work. *Compare* Agreement, Article IV, Section 3 (providing that the Company may use "temporary

---

[6] Accordingly, this case is unlike *Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 1-9 AFL-CIO, CLC v. S.D. Warren Co.*, 382 F.Supp.2d 130, 142 (D. Me. 2005), wherein "the parties could not agree on what issues were properly before the arbitrator and expressly authorized him to resolve the issue."

[7] Likewise, there was no question/issue grieved or submitted about whether any particular individuals were or were not temporary employees given their hours worked, their association with a staffing agency etc.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

{C1548932.1}  -12-

employees" to "fill temporary jobs such as seasonal construction" jobs) and Agreement at 46 (providing that "qualified contractors" may install gas piping and make certain "connections and tie-ins"). *See also* Company Brief at 23-30 (discussing the law regarding the use of contractors).

Because the issue before the arbitrator related solely to contractors, the Company did not offer evidence or argument at the arbitration hearing about, *inter alia*, what the term "temporary employees" means (*e.g.*, does it mean only employees on the Company's payroll or also employees supplied by a staffing agency) and what work "temporary employees" may perform under Article IV, Section 3 of the Agreement, as well as past practices and prior negotiations concerning Article IV, Section 3 of the Agreement.

The Union's misguided attempt to try and broaden and reframe the issue in its post-hearing brief by asserting that the Company "violated the Agreement by transferring bargaining unit work to contractoes [sic] *and employees outside of the unit*" (Union Brief at 10) doesn't change anything (if anything, it is an acknowledgment by the Union that the stipulated issue did not cover temporary employees). *See General Electric Co.,* 429 F.2d 812 (a discussion "during the grievance hearing about [issues] not specified in the written grievance does not enlarge the scope of permissible arbitration" because the "contract does not provide for oral enlargement of a grievance" and any written "amendments [to the grievance] require consent" of all parties).

Again, whether the Company "violated the Agreement by transferring bargaining unit work to … employees outside of the unit" was not part of the Union's grievance, and the Company did not consent to any amendment to the grievance. Grievance (Application Exhibit B). Indeed, with respect to the construction inspection work at issue in this action, the Company expressly stated that the Union's grievance was "not about whether construction inspection work

may be assigned to temporary employees" pursuant to Article IV, Section 3 of the Agreement. Company Brief (Application Exhibit F) at 34.[8]

As noted, the arbitrator correctly found that the Company's use of contractors did not violate the Agreement. *See* Award. As noted, the arbitrator then went beyond the scope of the issue submitted to her as set forth in the Union's Grievance, the Union's Demand for Arbitration, and the Parties' stipulation at the arbitration hearing (as confirmed by the arbitrator), by also determining that the Company could not use temporary employees to perform construction inspection because such an assignment is not permitted by Article IV, Section 3 of the Agreement, even though that provision unambiguously provides that the Company may hire "temporary employees" to "fill temporary jobs such as seasonal construction" jobs. Agreement (Application Exhibit A) at Article IV, Section 3.

As such, even if the issue of whether the Company violated the Agreement by using temporary employees to perform construction inspection work had been submitted to her by the Parties (it was not), the arbitrator made a manifest error of law in ordering that the Company cease and desist from assigning any and all "construction inspection work to temporary, non-bargaining unit employees" because she disregarded or modified an unambiguous provision of the Agreement providing that the Company may hire "temporary employees" to "fill temporary jobs *such as seasonal construction*" jobs. Agreement [Doc 1-1], Article IV, Section 3 (emphasis added). *See* Exhibit A (Article XIV, Section 2) ("The arbitrator shall have no power to add to, or subtract from or otherwise modify the terms of this Agreement"). *See also Poland Spring Corp.*,

---

[8]Thus, apart from the fact that the parties stipulated to the issue to be resolved by the arbitrator (which she restated in the Award), this case is also unlike *Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 1-9 AFL-CIO, CLC*, 382 F.Supp.2d at 139, in that the Company did take "action to alert the arbitrator that [the issue of whether the Company could use temporary employees to perform construction inspection work] was not properly before [her]."

314 F.3d at 33 ("If the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement"); *Challenger Caribbean Corp.*, 903 F.2d at 860-61 (an arbitrator "may not ignore the plain language of the contract" and if the "language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement"); *Eastern Maine Medical Center*, 1998 U.S. Dist. LEXIS 3279 at **6-7 (an arbitrator may not "interpret collective bargaining agreements or impose a remedy which directly contradicts the language of the agreement"); *Maine Central Railroad Co.*, 663 F. Supp. at 429 (a "manifest error" occurs "if the arbitrator[] undertake[s] to disregard or modify the unambiguous provisions of the underlying collective bargaining agreement").

In other words, the arbitrator added a limitation to the Agreement that was not bargained for and agreed upon by the Parties. *See* Exhibit A (Article XV, Section 3) ("This document constitutes the entire Agreement between the Company and the Union arrived at as a result of collective bargaining negotiations, except such amendments hereto as shall have been reduced to writing and signed by both the Company and the Union").

CONCLUSION

For all of these reasons, by her Award, the arbitrator: (a) exceeded her authority and powers by deciding that the Company violated the Agreement by using temporary employees to perform construction inspection work because the only question submitted to her was whether the Company violated the collective bargaining agreement by using contractors to perform certain work, including construction inspection work; and (b) exceeded her powers, made a manifest error of law, substituted her own sense of industrial justice in place of the terms set forth in the Agreement, and issued an Award that is irrational and fails to draw its essence from the terms of the Agreement by disregarding or modifying an unambiguous provision of the

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

Agreement providing that the Company may hire "temporary employees" to "fill temporary jobs *such as seasonal construction*" jobs. Accordingly, that portion of the Award finding that the Company violated the Agreement by assigning construction inspection work to temporary employees and ordering the Company to cease and desist from assigning such work to temporary employees must be vacated.

        Respectfully submitted,

        UNITIL CORPORATION AND NORTHERN
        UTILITIES, INC. D/B/A UNITIL

        By Their Attorneys,
        SULLOWAY & HOLLIS, P.L.L.C.

DATED: March 17, 2017         By: /s/ William D. Pandolph, Esq.
        William D. Pandolph, Esq.
        Edward M. Kaplan, Esq.
        9 Capitol Street
        Concord, NH 03301
        (603)224-2341
        e-mail: wpandolph@sulloway.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 17, 2017.

DATED: March 17, 2017         By: /s/ William D. Pandolph, Esq.
        William D. Pandolph, Esq.