UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| Unitil Corporation and Northern Utilities, Inc. d/b/a Unitil,<br>    *Plaintiffs*,<br><br>   v.<br><br>Utility Workers Union of America, Local 341,<br>    *Defendant*. | Civil Action No. 2:16-cv-00443-JAW |

## PLAINTIFFS' REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiffs Unitil Corporation and Northern Utilities Inc. d/b/a Unitil (collectively the "Company") submit this reply to Utility Workers Union of America, Local 341's objection to plaintiff's motion for judgment on the pleadings.

The Union's first argument is that "employee" means "contractor" because employment is a "kind of contract." Union Objection [Doc. 20] at 2-3. As such the Union asserts, when the parties stipulated that the sole issue before the arbitrator was whether the Company "violate[d] the collective bargaining agreement by using *contractors* to perform the work set out in the [Union's] April 24, 2015 grievance," they necessarily were stipulating that the issue also was whether the Company violated the agreement by using *temporary employees* to perform such work. The Union's continued effort to try and turn apples into oranges is without merit. If the Union really believed that contractors and employees were the same, then it would not have tried to broaden and reframe the stipulated issue in its post-hearing brief as being whether the Company "violated the Agreement by transferring bargaining unit work to contractoes [sic] *and* employees outside of the unit." Union Arbitration Brief at 10 [Doc. 1-7] (emphasis added).

Even if this argument had any merit outside the confines of the subject collective bargaining agreement (it does not), the agreement distinguishes contractors from temporary employees in that the question of whether the Company may use "contractors" to perform certain work is governed by different contractual provisions (and legal principles) than the question of whether the Company may use "temporary employees" to perform such work. *Compare* Agreement, Article II, Section 1 ("The Company recognizes the [Union] to be the exclusive representative of employees of the Company") and Agreement, Article IV, Section 3 (providing that the Company may use "temporary employees" to "fill temporary jobs such as seasonal construction" jobs) with Agreement at 46 (providing that "contractors" may install gas piping and make certain "connections and tie-ins" and referencing a "Contractor Policy") and Agreement at 58 (discussing work assigned to "contractors"). *See also* Company Brief [Doc. 1-6] at 23-30 (discussing the law regarding the use of contractors).

The Union's next argument is that because: (a) the Company provided information about three individuals employed by Adecco (John Courtemanche, William Leatham and Joseph McSheffery) in response to a document request concerning the "outsourcing of construction inspector work;"[1] and (b) "[o]utsourcing in the employment context is a contract with an outside supplier, which is a kind of contracting" (Opposition at 5), then these "three men are contractors" and, accordingly, fall within the stipulated issue presented to the arbitrator.[2] This argument

---

[1] The Company produced over 4,000 pages of documents in response to the Union's document production request.

[2] As an aside, and contrary to what the Union seemingly wants to the Court to believe, the grievance was not simply about construction inspection work, but rather involved a challenge to the assignment of work to contractors to: (a) replace old and/or install new natural gas distribution lines (two mains and two service lines) and retire an old natural gas service line [Grievance Parts 1, 2, 4, 5, 7]; (b) inspect the construction work undertaken by other contractors [Grievance Part 6]; and (c) conduct outdoor "service line [gas leak] surveys" [Grievance Part 3].

misses the point.  Putting aside that the Union inappropriately has submitted documents [Docs. 20-1, 20-2 and 20-3] (unauthenticated documents, at that) in connection with its motion for judgment on the pleadings,[3] the arbitrator did not determine that the Company was precluded from using contractors to perform construction inspection work (to the contrary, she correctly determined that the Company could use contractors to perform such work), or even that the Company could not use Courtemanche, Leatham and McSheffery to perform construction inspection work.  Rather, with sole reference to a provision in the collective bargaining agreement concerning "temporary employees" (*i.e.*, Article IV, Section 3), and notwithstanding that the Union's brief does not even mention "temporary employees" or the contractual provision concerning temporary employees, or even attempt to argue that construction inspection work does not fall within the scope of the contractual provision allowing the use of temporary employees to perform "construction" work, the arbitrator determined that the Company may not assign construction inspection work to temporary employees.  No matter how the Union tries to spin it, this was not an issue before her.

Undeterred, the Union argues that it "filed its post-hearing brief, in which it made its argument concerning temporary employees" and that by "remain[ing] silent after receiving the brief [containing such argument] … the Company waived its position by not objecting to the Arbitrator" (even though the arbitration had been declared closed).  Union Objection at 7.  This is false.  As noted, the Union's brief does not even include the words "temporary employees" or reference the contractual provision concerning temporary employees (Article IV, Section 3), let

---

The grievance also involved the Company's use of contractors for snow removal [Grievance Part 8] and to clean its facilities [Grievance Part 9].  *See* Doc. 1-2 and 1-3.

[3]The Union's objection makes reference to a "Kelly" affidavit (Opposition at 4), but no such affidavit was filed (or would be permissible).  *See Sam Horse Corp. v. TQL Trading, Inc.*, 2014 U.S. Dist. LEXIS 131192, at \*\*6-7 (C.D. Cal. Sept. 17, 2014) (a court may not consider a declaration or exhibits submitted with a motion for judgment on the pleadings).

alone even attempt argue that construction inspection work does not fall within the scope of the contractual provision allowing the Company to use temporary employees for construction work. *See* Doc. 1-7. As such, there was nothing on this point for the Company to "cry foul" about in response to the Union's brief.

As a last grasp effort to try and avoid the unavoidable conclusion that the arbitrator improperly decided a question that the parties had not agreed to submit to her, *see Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273 (1st Cir. 1983), the Union seizes on a passing reference to temporary employees in the Company's 34-page post-hearing brief and proclaims that this is tantamount to an agreement by the Company that the issue before the arbitrator now also included whether temporary employees could perform construction inspection work. This is nonsensical. As noted, the Company was pointing out that the Union could not establish that it was harmed by the use of contractors to perform construction inspection work because it also was permitted to use non-bargaining unit "temporary employees" to perform such work (which, given the plain language of Article IV, Section 3 allowing the Company to use temporary employees to fill "construction" jobs, was not thought to be in dispute). Nothing about the Company's passing reference to temporary employees suggests that it had agreed that the arbitrator also could determine whether construction inspection work fell within the scope of Article IV, Section 3 etc. In fact, as noted, the Company expressly stated in its brief that the issue before the arbitrator was not "whether construction inspection work may be assigned to temporary employees" pursuant to Article IV, Section 3 of the agreement. Given this, and given the absence of any contrary argument in the Union's brief, there was nothing further that needed to be done.

As noted, if the issue before the arbitrator had been whether the Company may use temporary employees to perform construction inspection work under Section IV, Article 3, then the Company would have offered evidence and argument at the arbitration hearing and in its brief about, *inter alia*, what the term "temporary employees" means and what work "temporary employees" may perform under Article IV, Section 3 of the Agreement, as well as past practices and prior negotiations concerning Article IV, Section 3 of the Agreement. Under the circumstances, it would be manifestly unfair to allow a determination to stand on an issue which the Company did not have a full and fair opportunity to arbitrate.

Respectfully submitted,

UNITIL CORPORATION AND NORTHERN UTILITIES, INC. D/B/A UNITIL

By Their Attorneys,
SULLOWAY & HOLLIS, P.L.L.C.

DATED:  April 21, 2017       By:   /s/ William D. Pandolph, Esq.
                                   William D. Pandolph, Esq.
                                   Edward M. Kaplan, Esq.
                                   9 Capitol Street
                                   Concord, NH 03301
                                   (603)224-2341
                                   e-mail:  wpandolph@sulloway.com

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 21, 2017.

DATED:  April 21, 2017       By:   /s/ William D. Pandolph, Esq.
                                   William D. Pandolph, Esq.