UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITIL CORPORTATION and | ) | |
| NORTHERN UTILITIES, Inc. | ) | |
| d/b/a/ UNITIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:16-cv-00443-JAW |
| v. | ) | |
| | ) | |
| UTILITY WORKERS UNION | ) | |
| OF AMERICA LOCAL 341, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS

A public utility and a public utility holding company move for judgment on the pleadings, seeking to partially vacate an arbitration decision and award on the grounds that the arbitrator lacked authority to decide an issue in dispute and that she made a manifest error of law in her award. A labor union also moves for judgment on the pleadings, arguing that the Court must give the arbitrator's action the utmost deference, that the arbitrator acted within her authority, and that she did not make a manifest error of law. The Court grants the labor union's motion and denies the companies' motion because this case is not among the exceedingly few wherein a Court may disturb an arbitration decision and award, and, contrary to the employer's position, the Court determines that the Arbitrator ruled on an issue that the parties presented to her for decision. Although the Court views the employer's challenge to the arbitrator's ruling as skirting the very edge of frivolousness, the Court declines

1

to award the union its attorney's fees and costs, because the employer's civil action did not cross the line.

## I. BACKGROUND

### A. Procedural History

On August 29, 2016, Plaintiffs Unitil Corporation and Northern Utilities, Inc. d/b/a Unitil (collectively Unitil) applied and moved to vacate the portion of a July 28, 2016 arbitration decision and award unfavorable to it. *Appl. to Vacate Arbitration Award* at 1 (ECF No. 1) (*Appl.*). Unitil attached seven exhibits.[1] Defendant Utility Workers Union of America, Local 341 (the Union) answered and counterclaimed for confirmation and enforcement of the Arbitrator's award on October 31, 2016. *Answer and Countercl. of Def. Utility Workers Union of America, Local 341* (ECF No. 8) (*Answer*). Unitil answered the counterclaim on November 21, 2016. *Pl.s' Answer to Def.'s Countercl.* (ECF No. 11).

On March 17, 2017, the parties moved for judgment on the pleadings. *Pls.' Mot. for J. on the Pleadings* (ECF No. 19) (*Pls.' Mot.*); *Mot. for J. on the Pleadings of Def. Utility Workers Union of America, Local 341* (ECF No. 18) (*Def.'s Mot.*). The Union and Unitil responded to each other's motions on April 7, 2017. *Union's Opp'n to Unitil's Mot. for J. on the Pleadings* (ECF No. 20) (*Def.'s Opp'n*); *Pls.' Obj. to Def.'s Mot. for J. on the Pleadings* (ECF No. 21) (*Pls.' Opp'n*). On April 21, 2017, Unitil

---

[1] The parties stipulated that each exhibit is a true and genuine copy of the original that the Court may properly consider in conjunction with the pending cross-motions. *See Stip. of the Parties re Docs.* (ECF No. 13).

replied to the Union's opposition. *Pls.' Reply to Def.'s Obj. to Pls.' Mot. for J. on the Pleadings* (ECF No. 22) (*Pls.' Reply*).

## B.    Factual Background[2]

### 1.    The Parties

Unitil Corporation is a public utility holding company organized and existing under and by virtue of the laws of the state of New Hampshire. *Appl.* ¶ 4. Unitil Corporation's utility affiliates include Northern Utilities, Inc. d/b/a Unitil. *Id.* Northern Utilities, Inc. is a public utility organized and existing under and by virtue of the laws of the state of New Hampshire. *Id.* ¶ 5. Northern Utilities, Inc. is currently, and was at all times pertinent hereto, doing business within the District of Maine and is an employer in an industry affecting commerce within the meaning of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. *Id.*

Defendant Utility Workers Union of America, Local 341 is an unincorporated labor organization within the meaning of § 301 and represents employees in an industry affecting commerce. *Id.* ¶ 6. The Union is the authorized bargaining representative for certain employees at the Company's facilities in Maine. *Id.* The Union maintains its principal office in Old Orchard Beach, Maine. *Id.*

### 2.    The Collective Bargaining Agreement

Unitil and the Union were parties to a collective bargaining agreement (CBA) that operated from April 1, 2012 until March 31, 2017. *Appl.* Attach. 1*, Agreement*

---

[2]      In general, "an inquiring court is bound by an arbitrator's findings of fact." *Mercy Hosp., Inc. v. Mass. Nurses Ass'n*, 429 F.3d 338, 344 (1st Cir. 2005).

*by and between Northern Utilities, Inc., Granite State Gas Transmission, Inc. and the Utility Workers Union of America, Local No. 341* (*CBA*). Article XIV of the CBA sets forth a grievance procedure that the parties must follow to resolve "difference[s] . . . as to the true interpretation and application of [the CBA]." *CBA* at 37. Article XIV also provides that if a "grievance involving the interpretation or application of [the CBA] is not satisfactorily resolved in the grievance procedure[,] the aggrieved party may request that the matter be referred to the American Arbitration Association (AAA) for appointment of an arbitrator under its rules to arbitrate grievances." *CBA* at 38. The CBA goes on to state that "[t]he arbitrator shall have no power to add to, or subtract from or otherwise modify the terms of [the CBA.]," and that, "[t]he decision of the arbitrator shall be final and binding on both parties and shall have the same force and effect as a judgment of law." *Id.*

### 3.   The Grievances

On April 24, 2015, the Union submitted a grievance form, *Appl.* Attach. 2 *Grievance Form*, in accordance with the terms of the CBA. *CBA* at 37-38; *Appl.* ¶ 12. The Union included a number of grievances, all pertaining to "Contractor performing bargaining unit work." *Appl.* Attach. 2 *Grievance Form* (*Grievance Form*). The Grievance Form listed nine specific examples of the work being grieved. *Id.* Unitil summarily denied the grievances on April 29, 2015 stating "Grievance denied — No violation of Contract." *Appl.* Attach. 3 *Mem. from Bill Hobart of Unitil to Steve Kilburn.*

Of the seven types of work, only two were subjects of the arbitration: service line surveys and construction inspections, *see Appl.* Attach. 5 *Decision & Award*, at 2 n.1, 19 (*Decision & Award*) (noting that the Union was not pressing tasks 1, 2, 4, 5, 7, 8, 9, and was leaving for arbitration tasks 3, service line survey, system wide started 04-21-15, and 6, construction inspectors 04-06-15 system wide). In its application to vacate the arbitration award, Unitil further narrowed the dispute to only the ruling on construction inspectors. *Appl.* ¶ 1 ("The Company seeks to vacate that portion of the Award: (a) finding that the Company violated [the CBA] by assigning construction inspection work to temporary employees; and (b) ordering the Company to cease and desist from assigning such work to temporary employees").

### 4. The Arbitrated Issue

On November 6, 2015, the Union filed a demand for arbitration with Unitil and the AAA. *Appl.* Attach 4 *Demand for Arbitration* ("Contractors performing bargaining unit work in violation of contract"). Arbitrator Beth Anne Wolfson held a hearing on May 17, 2016 and received testimony from five witnesses. *Decision & Award* at 1. On June 23, 2016, the parties submitted post-hearing briefs. *Id.*; *Appl.* Attach. 6 *Resp't Unitil Corporation's Post-Hr'g Br.* (*Unitil Post Br.*); *Appl.* Attach. 7 *Union's Br.* (*Union Post Br.*).

In its post-hearing brief, Unitil characterized the issue before the Arbitrator:

> Did the Company violate the [CBA] by using outside contractors rather than bargaining unit employees to perform the work set forth in the Union's April 24, 2015 grievance? If so, what shall the appropriate remedy be?

*Unitil Post Br.* at 2. In its post-hearing brief, the Union characterized the issue regarding the construction inspectors:

> The Company improperly assigned Construction Inspection work to non-unit employees.

In her ruling, Arbitrator Wolfson characterized the issue:

> Did the Employer violate the [CBA] by using contractors to perform the work set out in the April 24, 2015 grievance? If so, what shall be the remedy?

*Decision & Award* at 2. These three descriptions of the issue before the Arbitrator demonstrate that Unitil, the Union, and Arbitrator Wolfson substantially agreed as to the issue submitted for arbitration.

## 5. The Arbitration Award

The Arbitrator issued her decision and award on July 28, 2016, in which she stated, "[t]he issue before me has two parts: the subcontracting out of the system wide service line survey work . . . and the use of temporary employees as [construction inspectors]." *Decision & Award* at 19.[3] Regarding the focus of this litigation, the Arbitrator concluded that Unitil violated the CBA "by using temporary, non-bargaining unit employees on a regular and continuing basis to perform construction inspections." *Decision & Award* at 22-23.

In arriving at her conclusion, the Arbitrator cited the CBA's definition of "temporary employees" as those "hired to fill temporary jobs such as seasonal

---

[3] The Arbitrator found that Unitil's use of "contractors" to perform line survey work did not violate the CBA. *Decision & Award* at 19-21; *Def.'s Mot* at 3 n.1. This finding is not contested.

construction, temporary maintenance work, and other unusual situations." *Id.* at 22. She then analyzed whether the facts surrounding the duration of the employment and nature of the work of three individuals met that definition. She concluded that they did not. First, she pointed to evidence that in recent years, two of the three workers had worked throughout the year, not seasonally. Second, she found that construction inspection work is not properly categorized as maintenance work. Lastly, she determined that no other unusual situations existed. *Id.* She also observed that Unitil has three Union-member employees certified to do the construction inspections, and nine others on the cusp of certification, still requiring an eight-hour course and an exam. *Id.* at 21-22.

As part of her award, the Arbitrator directed Unitil "to cease and desist from violating the [CBA] by assigning the construction inspection work to temporary, non-bargaining unit employees . . . [and] to afford eligible bargaining unit employees the opportunity to acquire [construction inspection] certification." *Decision & Award* at 23.

## II.  LEGAL STANDARDS

### A.    Judgment on the Pleadings Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) "is treated much like a Rule 12(b)(6) motion to dismiss." *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (citation omitted). "Because such a motion calls for an assessment of the merits of the

case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006) (citations omitted).  In assessing a Rule 12(c) motion a "court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." *Id.*  "A court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." *Id.* (citation omitted).

To withstand a Rule 12(c) motion, "a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true[.]' " *Pérez-Acevedo*, 520 F.3d at 29 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In sum, "to survive a motion for judgment on the pleadings, the complaint must state a claim that is plausible on its face." *Pineiro v. Gemme*, 937 F. Supp. 2d 161, 168-69 (D. Mass. 2013) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where, as here, the court is presented with cross-motions for judgment on the pleadings, the court's role is "to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (internal citations omitted).

### B.    Challenges to an Arbitration Award Standard

"Where parties to a collective bargaining agreement have provided for arbitration as the final and binding method for settling grievances the arbitration award is normally non-reviewable by a court." *Bettencourt v. Bos. Edison Co.*, 560 F.2d 1045, 1048 (1st Cir. 1977). "Only rarely, and in the most compelling circumstances, will a federal court tinker with an arbitral award made under the aegis of a collective bargaining agreement." *El Dorado Tech. Servs., Inc. v. Union Gen. De Trabajadores De P.R.*, 961 F.2d 317, 318 (1st Cir. 1992). The First Circuit has described challenges to an arbitration award in the labor-management context as "a steep uphill climb." *Mercy Hosp., Inc. v. Mass. Nurses Ass'n*, 429 F.3d 338, 343 (1st Cir. 2005). The United States Supreme Court has consistently endorsed the refusal of courts to review the merits of arbitration awards because "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). "As long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *Id.* (internal quotation omitted).

As the First Circuit explained, "judicial review of an arbitration decision is extremely narrow and extraordinarily deferential. A court cannot vacate an arbitral award as long as the arbitrator is even arguably construing the contract and acting within the scope of his authority. In the end, the court's task is limited to determining if the arbitrator's interpretation of the contract is in any way plausible." *Providence*

*Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16, 20 (1st Cir. 2001) (internal citations and quotations omitted). Further, "as a general proposition, an arbitrator's factual findings are not open to judicial challenge. Even if the arbitrator was seriously mistaken about some of the facts, his award must stand." *El Dorado*, 961 F.2d at 320.

Nonetheless, "an arbitrator's decision is not entirely impervious to judicial oversight." *Salem Hosp. v. Mass. Nurses Ass'n*, 449 F.3d 234, 238 (1st Cir. 2006). The First Circuit has held that "a court may review and set aside an arbitrator's decision only if the decision was: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." *Local 1445, United Food & Commercial Workers Int'l Union, AFL–CIO v. Stop & Shop Cos., Inc.*, 776 F.2d 19, 21 (1st Cir. 1985) (citing *Bettencourt*, 560 F.2d at 1050). However, an arbitration award must be confirmed, if it "rests on a plausible interpretation of the underlying contract." *Salem Hosp.*, 449 F.3d at 238. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38.

## III.  DISCUSSION

### A.  Arbitration Decision and Award

#### 1.  Scope of the Arbitration: Contractors versus Temporary Employees

Unitil argues that, by making a determination about its use of "temporary, non-bargaining unit employees," the Arbitrator impermissibly exceeded the scope of the issue submitted by the parties. [4] *Pls.' Mot.* at 6. Unitil contends that because the Union used the term "contractors" and not "temporary employees," in its grievance form and demand for arbitration form, the scope of the arbitration did not and could not legally encompass "temporary employees." *Appl.* ¶ 13; *Pls.' Mot.* at 1, 4-5; *Pls.' Opp'n* at 1-4. The Court disagrees.

In interpreting the meaning and scope of the issue submitted for arbitration, the judicial role is narrow. *Local 1837, Int'l Bhd. of Elec. Workers, AFL-CIO v. Me. Pub. Serv. Co.*, 579 F. Supp. 744, 752 (D. Me. 1984) (citing *Courier-Citizen Co. v. Bos. Electrotypers Union No. 11, Int'l Printing & Graphic Commc'ns Union of N. Am.*, 702 F.2d 273, 281-82 (1st Cir. 1983)). "[O]nce an issue has been committed to arbitration, both the collective bargaining agreement and the submission itself should be taken into account in determining the scope of the submission." *El Dorado*, 961 F.2d at 320.

### a. The Evidence, the Argument, and the Decision

Having reviewed the Arbitrator's decision and the post-hearing memoranda, the Court resolves that the temporary employee issue was actually litigated before

---

[4]    At one point in its application, Unitil claims that the Arbitrator determined that it could use contractors to perform construction inspection work. *Pls.' Mot.* at 1. Unitil later more accurately characterizes the arbitrator's decision and award when it says, "the arbitrator did not find . . . that the use of independent contractors . . . to perform construction inspection work violates the Agreement." *Pls.' Mot.* at 6. In fact, in the section regarding construction inspections, the Arbitrator spoke exclusively about "temporary employees."

the Arbitrator and, disappointed in the outcome, Unitil is belatedly and implausibly claiming that the temporary employee issue was never before the Arbitrator.

The origin of this controversy harkens back to the Union's terminology when it initially grieved a number of matters: "Contractor performing bargaining unit work, including . . . construction inspectors 04-06-15." *Grievance Form* at 1.[5] It is manifestly clear, however, that in referring to "contractor", the Union was referring, in the context of construction inspections, to temporary employees. Indeed, there is no evidence at all that, during the time in dispute, Unitil hired outside contractors— as opposed to temporary employees—to perform construction inspections. Thus, Unitil knew, the Union knew, and the Arbitrator knew that the controversy about Unitil's use of construction inspectors was about its hiring temporary employees, not outside contractors, to perform this work in place of bargaining unit employees.

---

[5]    The handwritten Grievance Form states:

> Contractor performing bargaining unit work.
>     Including: Main Replace on Allen & Washington Avenues 04-20-15 Portland
>                Service Replacement on Rocky Hill Rd. Cape Elizabeth
>                Service Line Survey started 04-21-15 System Wide
>                New Service Installation Barra Rd. 04-06-15
>                Service Retirement Rocky Hill Rd. Cape Elizabeth 04-23-15
>                Construction Inspectors 04-06-15 System Wide
>                New Mains 04-06-15 Main St. South Portland
>                Snow Removal ongoing in Season
>                Janitorial ongoing

*Grievance Form* at 1. The way the Grievance Form is written, it is apparent that Steve Kilman, the union representative, was using shorthand to telegraph the Union's issues. For Unitil to read this form as limiting the grievance to "Contractors performing bargaining unit work . . . Construction Inspectors 04-06-15 System Wide" when no contractors perform construction inspections, but temporary employees did perform construction inspections, strikes the Court as nearly a deliberate misreading of the obvious intent of the grievance form.

12

The Court arrives at this conclusion first by reading the Arbitrator's Award. Focusing on the construction inspection issue, the Arbitrator set forth detailed factual findings based on the evidence the parties presented. *Decision & Award* at 9-11. The Arbitrator noted that "contractor crews doing distribution work have to be inspected by operation qualified (OQ) constructions inspectors (CIs)." *Id.* at 9. She stated that the CIs "cannot be employed by the contractor whose crews they inspect." *Id.* The Arbitrator wrote that to be certified as a CI, a person must "be a Grade 9 OQ and have taken the training provided by the Employer." *Id.* She observed that only three bargaining unit employees were certified to do inspections, Tony Simpson, Bruce Harrington, and Steve Kilman. *Id.* at 10. Because of the need to prioritize their work, these bargaining unit employees were not always available to perform construction inspections. *Id.*

It was because there were "not enough certified CIs in the bargaining unit, the Employer hired three retirees (not from the Employer) through a temporary agency: William Leatham; Joseph McSheffery; and John Courtemanche." *Id.* The Arbitrator reviewed the hours that these three temporary employees worked for Unitil. *Id.* at 10-11. Having found these facts, the Arbitrator characterized the issue before her as "the use of temporary employees to perform construction inspections." *Id.* at 11. Based on this recitation of the evidence, it is difficult to understand why Unitil is now contending the issue was about the hiring of outside contractors to perform construction inspections.

There is no hint in the facts found by the Arbitrator that outside contractors were involved in any way in performing construction inspections during the period being grieved. In fact, the Arbitrator noted that the outside contractor actually doing the construction is barred from inspecting its own work. *Id.* at 9. There is no evidence in this record that Unitil ever hired an outside contractor to perform construction inspections during the period in dispute.[6] Therefore, Unitil's current position is that the Arbitrator should have decided the merits of a grievance that was not generated by any facts in the record.

Next, the Court examined the post-hearing memoranda to determine whether the parties actually argued the temporary employee issue concerning construction inspections. Indeed, in its post-hearing brief, Unitil thoroughly argued the question of temporary employees and whether it had the right to assign them to perform bargaining unit employee work, an issue it now implausibly claims was not even before the Arbitrator.[7] In its post-hearing brief, Unitil asserted that it "has the express contractual right to use either outside contractors, *temporary, non-bargaining unit employees* or, if available, bargaining unit employees to perform [construction inspection] work." *Unitil Post Br.* at 34 (emphasis supplied). It further

---

[6]     The Arbitrator refers to the fact that in the past Unitil's predecessor hired independent contractors to perform construction inspections. *Award & Decision* at 21 ("Apparently, the Employer's predecessor used contractors to perform the inspections if bargaining unit members were not available. Then the certification requirements changed"). There is no evidence in this record that Unitil hired any outside contractors in 2015 to perform construction inspections.

[7]     Regarding construction inspections, like Unitil's memorandum, the Union's post-hearing memorandum exclusively addressed Unitil's hiring of temporary employees. *Union Post Br.* at 14-17. There is no reference to Unitil's hiring outside contractors to perform construction inspections. *Id.*

14

argued that "because bargaining unit employees were and have remained fully occupied, they could not have been damaged by the assignment of such work *to temporary employees and/or outside contractors*." *Id.* (emphasis supplied).

Unitil went on to cite Article IV, Section 3 of the CBA (defining "temporary employees") as a relevant contractual provision and to refer to it while discussing the fact that Unitil assigns construction inspection work to "both outside contractors and retirees hired as non-bargaining unit, *temporary employees through an employment agency*." *Id.* at 15 n.14 (emphasis supplied). Unitil's post-hearing brief also included this statement: "during the 2015 construction season, the Company assigned work to: . . . (b) 5 or so 'operator qualified' construction inspectors (both outside contractors and temporary employees) . . . ." *Id.* at 20.

It is true that in its post-hearing brief, Unitil included a qualification in a footnote:

> Putting aside that this grievance is not about whether construction inspection work may be assigned to temporary employees . . . .

*Id.* at n.23. In the next breath, it argued the merits of the issue:

> Putting aside that this grievance is not about whether construction inspection work may be assigned to temporary employees ("yes") or whether certain temporary employees should have become bargaining unit members under the terms of the [CBA] ("no"), only one of these temporary employees (William Leatham) regularly performed work outside of the construction season. *See* Union Exhibit 4. Again, this work (*i.e.*, writing operating procedures) is not bargaining unit work. Leblanc Testimony. As such, whatever the relevance, the Union did not establish that the Company has or had sufficient work to hire three more full-time, year-round bargaining unit employees.

*Id.*

15

Unitil argued in the alternative: the Arbitrator should not reach the issue, but if she does, Unitil should win. The Court is left with the conclusion that if Unitil had won the temporary employee issue, Unitil would have been well satisfied. Accordingly, Unitil's real objection is not to the Arbitrator's consideration of the temporary employee issue; it is with her ruling in the Union's favor. What Unitil never did, until this lawsuit, is directly and unequivocally limit the issues before the Arbitrator to outside contractors, not temporary employees. Nor could it have reasonably done so, because there were no outside contractors performing construction inspections. Having placed the issue on the table, Unitil hedged its bet and lost, and Unitil now contends that the issue was never on the table to begin with. The Court is deeply skeptical.

### b. Caselaw

In support of its contention, Unitil cites *Courier-Citizen Co. v. Boston Electrotypers Union No. 11, International Printing & Graphic Communications Union of North America*, 702 F.2d 273 (1st Cir. 1983) for the proposition that an arbitrator "lacks authority to decide questions the parties have not agreed to submit to him." *Id.* at 281. In *Courier-Citizen*, an arbitrator awarded back pay to a union member on the premise that his employer's failure to comply with one of the arbitrator's prior awards had caused the union member to miss a job opportunity.[8]

---

[8] The issues submitted to the arbitrator were whether an employer had violated a collective bargaining agreement by hiring another worker, and, if so, what the proper remedy should be. *Id.* at 281.

16

As the First Circuit explained, in vacating the portion of the district court's judgment enforcing this award, this union member was "a third person whose job was never initially placed in issue at all." *Id.* at 282. For that reason, "there [wa]s merit to the [employer]'s claim that it was unfairly surprised by the award to [the union member]," and the arbitrator had impermissibly exceeded the scope of the issue presented to him. *Id.* at 282. The arbitration therefore was, according to the parties' submission, supposed to focus solely on one other identifiable employee. The First Circuit noted that "[w]hile an arbitrator had broad power to fashion remedies on issues the parties have empowered him to resolve, he lacks authority to decide questions the parties have not agreed to submit to him." *Id.* at 281 (citations omitted). The First Circuit concluded "there is merit to the Company's claim that it was unfairly surprised by the award. . . . " *Id.* at 282.

By contrast, here, there was no reasonable uncertainty on the part of Unitil, the Union, or the Arbitrator that the arbitration was about Unitil's use of non-Union temporary employees to conduct construction inspections. In fact, as the Court has discussed, the Arbitrator's decision makes clear that the dispute centered on three specific temporary employees, who were not members of the bargaining unit and who were performing construction inspections. *Decision & Award* at 14, 18, 22. Unitil may not claim unfair surprise that the Arbitrator addressed an issue the parties in fact presented; indeed, Unitil may not justifiably claim it was surprised at all. *See Paper, Allied-Industrial, Chem., & Energy Workers Int'l Union, Local 1-9, AFL-CIO, CLC v. S.D. Warren Co.*, 382 F. Supp. 2d 130, 139 n.9 (D. Me. 2005) (party cannot be

heard to be surprised by arbitrator's reference to filings and arguments put before her by adverse party).

Unitil also relies upon *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580 (5th Cir. 1980). In the labor dispute in *Piggly Wiggly*, the parties submitted for arbitration, among other issues, the validity of a specifically named term in the underlying CBA. *Id.* at 582. The arbitrator found that the provision was not a valid part of the agreement at all. The parties did not disagree about the scope of the submission or whether the arbitrator exceeded the scope of the submission. The submission expressly asked the arbitrator to opine on the validity of the provision of the CBA. In its later lawsuit, the employer sought to vacate the arbitrator's award on the grounds that the arbitrator, in invalidating the provision in question, had exceeded his authority because his action conflicted with another provision of the CBA.[9] The nature of the dispute here is different. The Arbitrator here did not invalidate any part of the CBA. The dispute regarding the scope of the submission to the Arbitrator is one of interpretation.

Rather than being outside the scope of arbitration, the construction of language in a CBA is common grist for an arbitrator's mill. The distinction Unitil draws between "contractors" and "temporary employees" is akin to the distinction between

---

[9]   The employer cited this language from the agreement as prohibiting the Arbitrator from modifying other provisions: "The Arbitrator shall have no authority to change, amend, add to, subtract from, modify or amend any of the terms or provisions of this Agreement." *Id.* at 582.

the terms "jobs" and "work" at issue in *Northern New England Telephone Operations LLC v. Local 2327, International Brotherhood of Electrical Workers.*, No. 1:12–cv–185–GZS, 2013 WL 393332 (D. Me. Jan. 31. 2013), *aff'd* 735 F.3d 15 (1st Cir. 2013). The CBA in that case included a provision that limited FairPoint's ability to effect a "permanent transfer of jobs." *Id.* at *2. FairPoint developed and executed a plan to have union members handle certain customer service calls. Thereafter, it decided to route a subset of these calls to non-union contractors. The union grieved, and the parties submitted for arbitration the issue of whether FairPoint had violated the "transfer of jobs" provision. The arbitration panel found that "[b]y transferring the work of handling [these certain] orders to [] contractors . . . the Company permanently transferred jobs . . . ." *Id.* at *3. FairPoint urged the court to vacate the panel's action, in part based on the argument that transferring work and transferring jobs are not one and the same. The district court rejected FairPoint's argument:

> Second, Fairpoint claims that the Arbitration Award conflated "jobs" with "work" in the Transfer of Jobs provision by preserving Union "work" rather than protecting Union "jobs." Specifically, Fairpoint states that "jobs" and "work" are analytically distinct and yet the Arbitration Panel substituted "work" for "jobs" in the Transfer of Jobs provision. Here again Fairpoint is merely urging a different interpretation of the contract language to the facts of this case. That is not a basis for the Court to overturn an arbitration award. *See United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (stating that "the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.") . . . The Court will not disturb the plausible finding that by transferring simpler LSR (Local Service Requests) work, Fairpoint permanently transferred Union jobs as prohibited by the Transfer of Jobs provision.

*Id.* at *5.

The First Circuit affirmed. *Id.* at 735 F.3d at 17, 25. The First Circuit observed that the arbitration panel's interpretation was "indeed expansive" and "if we were initially tasked with construing the meaning of this term, we might find FairPoint's argument more convincing." *Id.* at 24. However, the First Circuit wrote that they could not say "that it is beyond any plausible interpretation of the term as used in the CBA . . . ." *Id.*

The First Circuit has indicated that language quite similar to that appearing in the parties' CBA provides a more general basis not to disturb the arbitrator's interpretation of the scope of the question submitted to her. In *Trustees of Boston University v. Boston University Chapter, American Association of University Professors*, 746 F.2d 924 (1st Cir. 1984) (per curiam), the First Circuit wrote that the CBA between the parties "plainly left disputes regarding contract interpretation— including the scope of the arbitrator's authority—in the hands of the arbitrator." *Id.* at 927. In so concluding, the court cited this language in the agreement: "[g]rievances involving application or interpretation of the provisions of this Agreement" are reserved for final and binding arbitration. *Id.*

The CBA here includes substantially similar language:

If a grievance involving the interpretation or application of this Agreement is not satisfactorily resolved in the grievance procedure[,] the aggrieved party may request that the matter be referred to the American Arbitration Association for appointment of an arbitrator under its rules to arbitrate grievances. The arbitrator shall have no power to add to, or subtract from or otherwise modify the terms of this Agreement. The decision of the arbitrator shall be final and binding on

both parties and shall have the same force and effect as a judgment of law.

*CBA* at 38. Just as in *Trustees of Boston University*, the language here gave Arbitrator Wolfson substantial latitude. The language in the parties' CBA does not limit the scope of an arbitration, except to clarify that the arbitration must "involve[e] the interpretation or application of this Agreement." *Id.* Furthermore, the section of the CBA that outlines the steps in the grievance procedure that must precede any arbitration pursuant to the CBA states: "[i]f the grievance is not resolved at this step in a manner satisfactory to both parties, then the grievance *or dispute* shall be submitted to arbitration" in accordance with the section included immediately above. *CBA* at 37 (emphasis supplied).[10] This clause undermines Unitil's rigid suggestion that the exact wording on the forms filled out by the Union controls the scope of the arbitration. The grievance and the submission may have used the term "contractors," but *the dispute* was clearly about Unitil utilizing non-Union workers—irrespective of their precise status vis-à-vis Unitil—for various types of assignments. Thus, Unitil has provided the Court an insufficient basis on which to conclude that she impermissibly enlarged the scope of the arbitration.

## 2. Procedural Arbitrability

---

[10] The CBA in *Trustees of Boston University*, reads less permissively. If a grievance was not satisfactorily resolved in the initial, intra-University process required by the agreement, it stated that the aggrieved party "may submit the grievance [not 'dispute'] to arbitration." *Compl.* Attach. A *Agreement between The B.U.C.-A.A.U.P. and the Trustees of Boston University for the period September 1, 1981, to August 31, 1984* at 31, *Trs. of Bos. Univ. v. Bos. Univ. Chapter, Am. Ass'n of Univ. Professors*, (D. Mass. Feb. 3, 1984) No. 84-347-N. The *Trustees of Boston University* agreement also required that the first writing of the grievance "state the particular article(s) of the [a]greement relied upon and the relief sought." The CBA here contains no similar requirement.

21

As a variant of its core argument that "contractors" cannot include "temporary employees," Unitil contends that, because the Union used the former term in its grievance, any aspect of the grievance pertaining to "temporary employees" was not fully processed through the grievance process required by the CBA prior to being submitted for arbitration. *See Pls.' Mot.* at 11 (citing *Int'l Union of Elec., Radio, Mach. Workers, AFL-CIO v. Gen. Elec. Co.*, 429 F.2d 412, 413-14 (1st Cir. 1970)). For the same reasons the Court has already discussed, Unitil's position rings hollow.

Furthermore, the Supreme Court and the First Circuit have instructed that issues of procedural arbitrability, such as this one, are presumptively for the arbitrator to decide. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557-58 (1964); *Local 285, Serv. Emps. Int'l Union, AFL-CIO v. Nonotuck Res. Assocs., Inc.*, 64 F.3d 735, 739 (1st Cir. 1995); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002). The Arbitrator evidently concluded that the dispute before her— including aspects relating to "temporary employees"—was ripe for arbitration after having been grieved properly per the CBA.[11] The Court rejects the notion that the Union failed to exhaust the grievance process with respect to the non-Union employees performing construction inspection work, and that, thus, the dispute was not ripe for arbitration.

### 3. Lack of Manifest Error of Law in Award

---

[11] The lack of discussion in the Arbitrator's decision and Unitil's post-hearing brief about this issue also suggests that Unitil raises this issue for the first time before the Court.

Unitil contends that, even if the issue of whether the CBA permitted Unitil to use temporary employees to perform construction inspection work was properly before the Arbitrator, she committed a manifest error of law in ordering Unitil to cease and desist assigning construction inspection work to such employees. It claims that that aspect of the award directly contradicts the terms of the CBA, specifically Article XIV, Section 2, which reads in the relevant part: "[t]he arbitrator shall have no power to add to, or subtract from or otherwise modify the terms of [the CBA.]" *CBA* at 38. Unitil argues that the award constitutes a modification of Article IV, Section 3 of the CBA, which defines "temporary employees" as "those hired to fill temporary jobs such as seasonal construction, temporary maintenance work, or other unusual situations."[12] *CBA* at 4. Unitil takes the position that this definition constitutes an authorization to hire such workers. Unitil further asserts that construction inspection work is a subset of "seasonal construction" and that, thus, the CBA clearly authorizes it to hire temporary employees to perform such work. *Pls.' Mot.* at 14-15. Therefore, Unitil argues, any award that would prohibit it from assigning construction inspection work to temporary employees directly and impermissibly contravenes the clear language of the CBA.

---

[12] The full text of Article IV, Section 3 reads as follows:
"The term 'temporary employees' means those hired to fill temporary jobs such as seasonal construction, temporary maintenance work, or other unusual situations. Any such employees who shall have worked nine (9) consecutive months for the Company may thereby become a regular employee with seniority as of the date of becoming a regular employee, if regular positions are available. Temporary employees are not covered by the provisions of this contract. The Company, within its discretion, may sever the employment of temporary employees."

23

An arbitrator may not disregard or modify unambiguous provisions of the collective bargaining agreement she is charged to interpret and apply. *Me. Cent. Ry. Co. v. Bhd. of Maint. of Way Emps.*, 663 F.Supp. 425, 429 (D. Me. 1987); *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union to Tronquistas Local 901*, 763 F.2d 34, 41 (1st Cir. 1985) (internal quotations omitted). "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). However, "courts will not enforce an arbitration award which manifests the arbitrator's manifest infidelity to his obligation to interpret and apply the collective bargaining agreement." *Bettencourt*, 560 F.2d at 1049 (citing *Enter. Wheel*, 363 U.S. at 597).

Unitil cites Article IV, Section 3, defining the term "temporary employee" as an authorization for it to hire such employees for construction inspection work. *Pls.' Mot.* at 14; *Pls.' Opp'n* at 7. However, the language does not explicitly provide such authorization, nor does Unitil make an effort to explain how it arguably might. The CBA does not include the term "temporary employee" anywhere other than in the section defining it. Unitil's concerns about the potential ramifications of the Arbitrator's Award are not now before the Court, and the Court will not issue an advisory ruling on a future controversy that may never happen.

This case is unlike situations wherein arbitrators disregard clear language in agreements. One example is found in *Poland Spring Corp. v. United Food &*

*Commercial Workers International Union, AFL-CIO-CLC, Local 1445*, 314 F.3d 29 (1st Cir. 2002), which involved a union grievance regarding dismissal of an employee for insubordination. In *Poland Spring*, the underlying CBA provided that "discipline and discharge shall only occur for just cause. The parties agree that just cause for discharge shall include, but not limited to, the following . . . [i]nsubordination." *Id.* at 31. The arbitrator unambiguously determined that the dismissed employee had indeed engaged in insubordination. I*d.* at 34. Nevertheless, the arbitrator proceeded to create and distinguish categories of insubordination that did not exist in the CBA: "straightforward insubordination" and "insubordination with mitigating circumstances." *Id.* at 32. The arbitrator found that the dismissed employee's conduct fell in the latter category, and, for that reason, reinstated the employee. *Id.* The First Circuit affirmed the District of Maine summary judgment order vacating the arbitrator's award because the arbitrator had ignored the plain language of the agreement.

Even if authorization to hire temporary employees could be fairly read into the definition of temporary employees, and even if the Court agreed with this interpretation, as Unitil urges, "just because a court would interpret the contract differently from the arbitrator does not provide a basis for overruling him."[13] *Bettencourt*, 560 F.2d at 1049; *Trs. of Bos. Univ.* 746 F.2d at 926 (quoting *W.R. Grace*

---

[13] Unitil leaves the Court to speculate how an award constraining the manner in which Unitil assigns a particular type of work could amount to a modification of a CBA provision ostensibly authorizing the hiring of temporary employees.

*v. Rubber Workers Local 759*, 461 U.S. 757, 764 (1983)). Far from being her own brand of industrial justice, the Arbitrator's award is a reasonable response to the parties' submission, based in both a plausible interpretation of the CBA and in the facts giving rise to the dispute. Indeed her interpretation is final and binding on the parties ultimately because it is this interpretation for which they bargained. *Hoteles de Condado*, 763 F.2d at 41 (citing *Enter. Wheel*, 363 U.S. at 597).

Courts examine whether parties normally suppose that an arbitrator will fashion a remedy, or whether the remedy fashioned was in the contemplation of the parties. *Courier-Citizen*, 702 F.2d at 281-82. Here, Unitil was reasonably on notice that the Union complained of non-Union workers performing construction inspection work. While the three employees that both parties know were the subject of the dispute may have been more properly described as "temporary employees," there should have been no lack of clarity regarding the nature of the Union's grievance. *See Def.'s Opp'n* at 4-5. Indeed, Unitil does not claim that there were both "contractors" and "temporary employees" performing construction inspections. Hence both parties should have and likely did contemplate the possibility that the Arbitrator might fashion a remedy that would prohibit Unitil from continuing to assign construction inspection work to temporary, non-Union employees.

Having found that the issue of whether Unitil violated the CBA by using temporary employees to perform construction inspection work was properly before the Arbitrator, the Court also finds that, in fashioning a remedy, the Arbitrator did not make a manifest error of law. To disturb the Arbitrator's decision and award,

26

which draw their essence from the parties' bargained-for collective bargaining agreement, would exceed this Court's authority.

## B. Attorney's Fees

The Union argues that the Court should award the attorney's fees it incurred in defending this action. *Def.'s Mot.* at 14-16. It posits that the overwhelming weight of authority stood against Unitil's challenge to the Arbitrator's decision and award, and Unitil never should have brought the case.

"[A]n award of costs and fees is available as a matter of federal common law for actions proceeding under § 301 of the LMRA [Labor Management Relations Act]". *N. New England*, 735 F.3d at 24 (citing *Local 2322, Int'l Bhd. of Elec. Workers v. Verizon New England, Inc.*, 464 F.3d 93, 100 (1st Cir. 2006)). "[T]he standard for awarding costs and fees under Rule 11 is substantially the same as that of section 301 actions." *Id.* A court may order a deviation from the American Rule of attorney's fees when it "determines that the losing party has "acted in bad faith, vexatiously, or for oppressive reasons . . . ." *Local 285*, 64 F.3d at 737 (quoting *Aleyska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1974)). "[T]he term 'vexatious' means that the losing party's actions were frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Local 285*, 64 F.3d at 737 (internal quotations omitted).

The Court is deeply skeptical of Unitil's main argument here, namely that the issue of temporary employees was never before the Arbitrator, and the Court views Unitil's contentions in this lawsuit as skirting the very edge of frivolousness. The

First Circuit has "long lamented the 'exasperating frequency' with which arbitration awards are appealed." *N. New England*, 735 F.3d at 25 (quoting *Posadas de P.R. Assocs., Inc. v. Asociación de Empleados de Casino de P.R.*, 821 F.2d 60, 61 (1st Cir. 1987)). The Union argues with justification that by resorting to federal court, Unitil "has forced the Union to make needless expenditures of its members' dues money and has subjected members to many more months of the lost opportunity to perform and be compensated for Construction Inspection work." *Def.'s Mot.* at 15. Even so, as the First Circuit observed, "[t]he line between frivolous arguments and merely unpersuasive ones is fine." *N. New England*, 735 F.3d at 25.

Although the issue is a close one, the Court does not conclude that Unitil "acted in bad faith, vexatiously, or for oppressive reasons," *id.*, and with some hesitation, the Court declines to award attorney's fees to the Union.

## IV.   CONCLUSION

The Court hereby GRANTS Utility Workers Union of America, Local 341's Motion for Judgment on the Pleadings (ECF No. 19). The Court hereby DENIES Unitil Corporation and Northern Utilities Inc.'s Motion for Judgment on the Pleadings (ECF No. 18).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 1st day of November, 2017